**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on September 22, 2008, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: September 22, 2008**



Arthur I. Harris
United States Bankruptcy Judge

___

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| In re: | ) | Case No. 08-13700 |
|---|---|---|
| | ) | |
| LOUIS D. AMIR, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Arthur I. Harris |

MEMORANDUM OF OPINION[1]

This case is currently before the Court on the debtor's motion seeking recusal of the undersigned judge (Docket #102). For the reasons that follow, the motion is denied.

FACTUAL AND PROCEDURAL BACKGROUND

On May 16, 2008, the debtor, Louis D. Amir, filed a *pro se* petition under Chapter 13 of the Bankruptcy Code. In his schedules, the debtor listed $642,000 in assets and $25,900 in liabilities. The debtor schedules included no real property, but did include his interest in four vehicles, with values and secured

___

[1] This opinion is not intended for official publication.

claims scheduled as follows:

| Vehicle | Value | Amount of Secured Claim |
|---|---|---|
| 2007 Rolls Royce | $359,000 | $7,500 |
| 2007 Bentley | $190,000 | $9,600 |
| 2007 Cadillac Escalade | $49,000 | $4,400 |
| 2006 Mercedes Benz | $44,000 | $4,400. |

In addition, the debtor claimed no exemptions on Schedule C, listed no unsecured creditors on Schedule F, and reported net income in excess of $14,000 per month on Schedule I.

After the debtor failed to appear at the section 341 meeting of creditors on June 25, 2008, the Chapter 13 trustee filed a motion to convert the case to Chapter 7 pursuant to 11 U.S.C. § 1307. The certificate of service accompanying the motion indicates that a copy of the motion and notice of hearing was sent to the debtor by regular mail at the address the debtor indicated on his petition. After the debtor failed to respond to the motion to convert or appear at the hearing on the motion on July 31, 2008, the Court issued an order converting the case to Chapter 7 on August 4, 2008.

## *Chapter 7 Trustee's Motion to Take Possession of Debtor's Residence*

Shortly after the case was converted to Chapter 7 and David Simon was appointed Chapter 7 trustee, a flurry of motions and other papers were filed in this case. Among the filings was a motion by the Chapter 7 trustee for an order for authority to take physical possession of the debtor's residence and change the locks, with the assistance of the United States Marshal. According to the motion, as of the petition date, the debtor was the owner of real property located at 1860 Surrey Place in Gates Mills, Ohio, with a value well in excess of $1 million. On August 25, 2008, the debtor filed a response in opposition to the motion. Among the arguments the debtor asserted were that his residence was not property of the debtor's estate because he had transferred title to a third party on February 8, 2007, and that the debtor's alleged lack of cooperation was simply the result of problems he had been having receiving mail at his residence. On August 26, 2008, the Court heard argument on the trustee's motion and the debtor's objection. Both parties appeared. The Court held that prior to the Court ruling on the trustee's motion, the trustee must file an adversary proceeding to determine whether the real property at issue is property of the estate under 11 U.S.C. § 541. On August 28, 2008, the trustee initiated an adversary

3

proceeding, AP # 08-1258, to determine the validity, priority, and extent of all interests in the real property at issue, including claims to set aside any purported transfer of the debtor's interest in the property. An initial pretrial in the adversary proceeding is scheduled for September 29, 2008.

*Chapter 7 Trustee's Motion for Turnover of Vehicles and Debtor's Motion to Dismiss*

On September 2, 2008, the Chapter 7 trustee filed an expedited motion for turnover of property of the estate, in particular, the debtor's 2007 Cadillac Escalade, 2007 Rolls Royce Phantom, and 2007 Bentley (Docket #74). On September 8, 2008, one day before the scheduled hearing on the motion for turnover of the vehicles, the debtor filed a motion to dismiss his bankruptcy case. In his motion the debtor argued that due process required that his case be dismissed because he never received notice of the motion to convert.

The Court heard argument on the expedited motion for turnover of vehicles on September 9, 2008. The debtor argued that the Court should not order any turnover without first addressing his motion to dismiss, which had been filed the previous day. The Court responded by saying it would deny the motion to dismiss to the extent it sought dismissal of a Chapter 7 case, since creditors would clearly be prejudiced by such a dismissal. Nevertheless, to the extent the *pro se* debtor's

4

motion could be construed as a motion for reconsideration of the order converting the case from Chapter 13 to Chapter 7 due to alleged lack of notice, the Court would adjourn the matter for further hearing (*See* Docket #84).  That matter is now set for an evidentiary hearing on October 8, 2008, at 9:00 A.M. (*See* Docket #100).  In the meantime, the Court indicated it would grant the trustee's motion for turnover of the vehicles based on the lack of insurance, no objection by any secured creditors, and at least the possibility of equity in the vehicles.  Accordingly, on September 10, 2008, the Court issued an order requiring the debtor to turnover the vehicles; however, the Court did not grant all of the relief requested by the Chapter 7 trustee and specifically ordered the trustee not to sell or otherwise dispose of the vehicles until further order of the Court (*See* Docket #85).

*Debtor's Notice of Appeal and Motion for Stay Pending Appeal*

On September 11, 2008, the debtor filed a notice of appeal (Docket #89) of the order denying the motion to dismiss (Docket #84) and the order granting the motion for turnover of vehicles (Docket #85).  The debtor also filed a motion for a stay of all proceedings pending appeal.  Under Bankruptcy Rule 8005, the motion for a stay pending appeal should ordinarily be presented to the bankruptcy court in the first instance.  The Court has scheduled oral argument on the debtor's motion

5

for a stay pending appeal, and any response in opposition to the motion for October 8, 2008, at 9:00 A.M. (*See* Docket #100). Also, on September 11, 2008, the debtor apparently appeared at his 341 examination, but refused to answer any questions due to the notice of appeal being filed (*See* Docket #92).

*Debtor's Second Chapter 13 Petition (Case #08-15219)*

On July 8, 2008, while the above-captioned case was still pending, the debtor filed a second Chapter 13 petition, Case #08-15219. On July 21, 2008, the Court issued an order in Case #08-15219, requiring the debtor to appear and show cause why the debtor should be entitled to maintain an existing Chapter 13 case while asserting that a new automatic stay arises by filing a concurrent Chapter 13 case, particularly after a creditor has obtained relief from stay in the pending Chapter 13 case (Docket #8). The debtor did not appear at the July 31, 2008, hearing on the order to show cause, and Case #08-15219 was dismissed.

*Debtor's Motion for Recusal*

On September 16, 2008, the debtor filed a motion seeking recusal of the undersigned judge. Although there are a number of other pending motions, the Court will first address the debtor's motion for recusal.

DISCUSSION

Section 455 of Title 28 of the United States Code provides in pertinent part:

6

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
(b) He shall also disqualify himself in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings.

*Judge Whose Impartiality Is Being Questioned Is Responsible for Deciding the Issue in the First Instance*

"Section 455 clearly contemplates that decisions with respect to disqualification should be made by the judge sitting in the case, and not by another judge." *United States v. Balistrieri*, 779 F.2d 1191, 1202-03 (7th Cir. 1985). *Accord Green v. Nevers*, 111 F.3d 1295, 1303 (6th Cir. 1997) (judge not required to transfer recusal motions to another judge); *Bernard v. Coyne*, 31 F.3d 842, 843 (9th Cir. 1994) (responsibility for deciding § 455 recusal motion lies solely with judge to whom motion is directed); *In re Medrano Diaz*, 182 B.R. 654, 659 (Bankr. D.P.R. 1995) ("[A] judge whose impartiality is being questioned is responsible for deciding the issue in the first instance."), *aff'd*, 204 B.R. 842 (D.P.R. 1996), *aff'd*, 121 F.3d 695 (1st Cir. 1997) (table).

*Standard For Recusal Under Section 455*

As the Sixth Circuit noted in *Union Planters Bank v. L & J Development Co.*, 115 F.3d 378, 383 (6th Cir. 1997):

7

Pursuant to § 455(a), a judge must recuse himself or herself "where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." This statute is designed "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." Accordingly, "[w]here the question is close, the judge must recuse himself."

(citations omitted). "Because the standard is objective, the judge need not recuse himself based on the subjective view of a party." *Scott v. Metropolitan Health Corp.*, 234 Fed.Appx. 341, 354 (6th Cir. 2007).

Disqualification under § 455 generally must be predicated upon extrajudicial conduct rather than on judicial conduct. *See*, *e.g.*, *Green v. Nevers*, 111 F.3d at 1303-04. As Justice Scalia explained at length in writing for the Supreme Court in *Liteky v. United States*, 510 U.S. 540, 550-56 (1994):

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

8

> . . . [An extrajudicial source] is not the *exclusive* reason a predisposition can be wrongful or inappropriate. A favorable or unfavorable predisposition can also deserve to be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment.
>
> . . . .
>
> . . . It is enough for present purposes to say the following: First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration--even a stern and short-tempered judge's ordinary efforts at courtroom administration--remain immune.

(citations omitted) (emphasis in original). *See also Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003) (" 'Personal' bias is prejudice that emanates from some

source other than participation in the proceedings or prior contact with related cases."); *United States v. Nelson*, 922 F.2d 311, 319-20 (6th Cir. 1990) (same); *In re M. Ibrahim Khan, P.S.C.*, 751 F.2d 162, 164-65 (6th Cir. 1984) (bankruptcy judge did not demonstrate bias such as to warrant his disqualification).

*Application of Recusal Standard to the Debtor's Motion in this Case*

In the present case, the debtor's motion for recusal is based almost entirely upon expressions of attitude or opinion made from the bench or in the Court's written rulings. These are precisely the types of ruling that the Supreme Court and the Sixth Circuit have said almost never constitute a valid basis for a bias or partiality motion. They may be proper grounds for appeal but not for recusal. *See Liteky*, 510 U.S. at 555.

Nor do any of the specific examples cited in the debtor's motion provide any indication of a deep-seated favoritism or antagonism that would make fair judgment impossible. For example, the debtor asserts that the Court is biased because "every decision by Judge Arthur Harris has gone against the pro se Black Debtor, Mr. Amir." While it is true that the Court has ruled against Mr. Amir on a number of motions, these rulings were based on the merits of the particular motion, and, in some instances, on Mr. Amir's failure to file a response in

10

opposition.  Mr. Amir is free to appeal these decisions.  It is not true, however, that every decision has been against Mr. Amir.  In fact, on August 26, 2008, the Court ruled in favor of the debtor on the Chapter 7 trustee's motion for immediate authority to change the locks at the debtor's primary Gates Mills residence.  In his motion, the trustee requested that immediate action be taken to secure the real property, that Mr. Amir be immediately removed from the property, by the U.S. Marshal if necessary, and that the Gates Mills property to be immediately sold at auction.  The Court did not grant the trustee's motion, instead, the Court held that prior to the Court ruling on the trustee's motion, the trustee must file an adversary proceeding to determine whether the Gates Mills real property is property of the estate under 11 U.S.C. § 541.  The Court's legal decisions hardly constitute evidence of a deep-seated, racially-motivated, antagonism.

The debtor also asserts that the Court is biased because "Judge Harris has denied each of Amir's motions without even requiring the trustee to file a response."  The trustee is not required, in any event, to respond to a motion made by the debtor.  Further, a motion may be denied, absent any objection, if there is no legal basis to grant the motion.

Finally, the debtor asserts that the Court is racially biased, stating that "Judge Harris is a notorious racist," and alleges that Court staff have commented

11

on the appearance of racial bias against Mr. Amir. The debtor's assertion that the undersigned judge "is a notorious racist" is a serious allegation, which, if true, would cast doubt on the undersigned's fitness to continue as a United States Bankruptcy Judge. The Court believes that a reasonable observer, with knowledge of the facts, would conclude that there is no basis in law or fact to support an allegation of racism. Rather, the Court believes that the undersigned's reputation for fairness and impartiality and lack of racial prejudice is sufficient to defeat any bald assertions of racial prejudice made by the debtor in this case. In short, nothing in debtor's motion suggests that a reasonable person would conclude that the judge's impartiality might reasonably be questioned or that the judge has a personal bias or racial prejudice that merits recusal under 28 U.S.C. § 455 and applicable case law. Nevertheless, in an exercise of caution, the Court's denial of the debtor's recusal motion will be without prejudice to the debtor filing a new motion for recusal, consistent with the requirements of Rule 9011, based upon allegations of extrajudicial conduct, as opposed to conclusions drawn from the debtor's dissatisfaction with the Court's rulings in this case.

## CONCLUSION

For the foregoing reasons, the debtor's motion for recusal (Docket #102) is denied. This order is without prejudice to the debtor filing a new motion for

recusal, consistent with the requirements of Rule 9011, based upon allegations of extrajudicial conduct, as opposed to conclusions drawn from the debtor's dissatisfaction with the Court's rulings in this case.

    IT IS SO ORDERED.