The court incorporates by reference in this paragraph and adopts as
the findings and orders of this court the document set forth below.
This document was signed electronically on March 17, 2009, which
may be different from its entry on the record.

IT IS SO ORDERED.



_____
**Arthur I. Harris**
Dated: March 17, 2009
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 08-13700 |
| | ) | |
| LOUIS D. AMIR, | ) | Chapter 7 |
|     Debtor. | ) | |
| ————————————— | ) | |
| | ) | |
| DAVID SIMON, CHAPTER 7 | ) | Adv. Proceeding No. 08-1258 |
| TRUSTEE, | ) | |
|     Plaintiff, | ) | Judge Arthur I. Harris |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, *et al.*, | ) | |
|     Defendants. | ) | |

MEMORANDUM OF OPINION[1]

On March 10, 2009, the Court heard argument on several motions brought

_____

[1] This Memorandum of Opinion is not intended for official publication.   In
addition, this single Memorandum of Opinion is being entered in both
Case No. 08-13700 and Adv. No. 08-1258.

by the Chapter 7 Trustee and the *pro se* debtor, Louis Amir. The debtor failed to appear. For the reasons stated below: (1) the emergency motion to dismiss pursuant to 11 U.S.C. § 521(i) (Docket #366) is denied; (2) the debtor's emergency motions to stay (Docket #326 and Adv. No. 08-1258 Docket #136) are denied, without prejudice to the debtor promptly filing a motion for a stay pending a new appeal of today's denial of the motion to dismiss pursuant to 11 U.S.C § 521(i)(1), which the Court is prepared to hear on March 31, 2009; and (3) the trustee's motions to employ a realtor (Docket #57), to change locks at 1860 Surrey Place, Gates Mills, Ohio (Docket #61), to sell real property located at 1860 Surrey Place, Gates Mills, Ohio (Docket #69), and for an order directing the debtor to turnover personal property including a Kawasaki motorcycle (Docket #338) are adjourned to **March 31, 2009, at 10:00 a.m.**

## BACKGROUND AND PROCEDURAL HISTORY

This ten-month old case has a lengthy procedural history that is difficult to summarize. Nevertheless, the Court will attempt to recap the procedural history to provide some context to the motions being addressed in this opinion.

1. *Commencement of Case under Chapter 13 and Conversion to Chapter 7*

This case began with the filing of a Chapter 13 petition on May 18, 2008. The initial bankruptcy petition had numerous deficiencies, including missing

2

statements, schedules, and pay advices. The petition was filed using an outdated official form that contained no Exhibit D, but did have a check next to the box requesting a waiver of the credit counseling requirement based on exigent circumstances. On July 2, 2008, the Chapter 13 trustee filed a motion to convert the case for cause based on the debtor's lack of prosecution and what appeared to be substantial assets listed in the debtor's schedules, including a 2007 Bentley and 2007 Rolls Royce Phantom. On July 31, 2008, the Court held a hearing on the Chapter 13 Trustee's motion to convert. The debtor did not appear or otherwise respond to the motion to convert, and an order converting the case to a proceeding under Chapter 7 was entered on August 4, 2008.

### 2. Debtor's Second Chapter 13 Case, #08-15219

On July 8, 2008, the debtor filed a second Chapter 13 bankruptcy petition, even though the first case was ongoing. On October 3, 2008, the Court dismissed the second bankruptcy case.

### 3. Turnover Proceedings by Chapter 7 Trustee and Debtor's Objections and Early Motions To Dismiss

Shortly after the current case was converted, the Chapter 7 trustee moved for an order for authority to take physical possession of the debtor's residence and change the locks, with the assistance of the United States Marshal. According to

3

the motion, as of the petition date, the debtor was the owner of real property located at 1860 Surrey Place in Gates Mills, Ohio, with a value well in excess of $1 million. On August 25, 2008, the debtor filed a response in opposition to the motion. Among the arguments the debtor asserted were that his residence was not property of the debtor's estate because he had transferred title to a third party, IMC Mortgage Corporation (IMC), on February 8, 2007, and that the debtor's alleged lack of cooperation was simply the result of problems he had been having receiving mail at his residence.

On August 26, 2008, the Court heard argument on the trustee's motion for an order giving him physical possession of the debtor's residence. The Court held that prior to the Court ruling on the trustee's motion, the trustee should file an adversary proceeding to determine whether the real property at issue is property of the estate under 11 U.S.C. § 541. On August 28, 2008, the trustee initiated Adv. No. 08-1258 to determine the validity, priority, and extent of all interests in the real property at issue, including claims to set aside any purported transfer of the debtor's interest in the property to IMC.

On September 2, 2008, the Chapter 7 trustee filed an expedited motion for turnover of property of the estate, in particular, the debtor's 2007 Cadillac Escalade, 2007 Rolls Royce Phantom, and 2007 Bentley (Docket #74). On

4

September 8, 2008, one day before the scheduled hearing on the motion for turnover of the vehicles, the debtor filed a motion to dismiss his bankruptcy case. In his motion the debtor argued that due process required that his case be dismissed because he never received notice of the motion to convert.

On September 9, 2008, the Court heard argument on the expedited motion for turnover of vehicles. The debtor argued that the Court should not order any turnover without first addressing his motion to dismiss, which had been filed the previous day. The Court responded by saying it would deny the motion to dismiss to the extent it sought dismissal of a Chapter 7 case, since creditors would clearly be prejudiced by such a dismissal. Nevertheless, to the extent the *pro se* debtor's motion could be construed as a motion for reconsideration of the order converting the case from Chapter 13 to Chapter 7 due to alleged lack of notice, the Court would adjourn the matter for an evidentiary hearing. In the meantime, the Court indicated it would grant the trustee's motion for turnover of the vehicles based on the lack of insurance, no objection by any secured creditors, and at least the possibility of equity in the vehicles. Accordingly, on September 10, 2008, the Court issued an order requiring the debtor to turnover the vehicles; however, the Court did not grant all of the relief requested by the Chapter 7 trustee and specifically ordered the trustee not to sell or otherwise dispose of the vehicles until

5

further order of the Court (*See* Docket #85).

### 4. *Debtor's First Appeal - 6th Circuit BAP Case #08-8065*

On September 11, 2008, the debtor filed a notice of appeal (Docket #89) of the order denying the motion to dismiss and the order granting the motion for turnover of vehicles. Also, on September 11, 2008, the debtor apparently appeared at his 341 examination, but refused to answer any questions based on the notice of appeal being filed (*See* Docket #92). On October 8, 2008, this Court denied a stay pending appeal. On October 14, 2008, the BAP also denied a stay pending appeal, and on November 13, 2008, the appeal was dismissed for want of prosecution.

### 5. *Evidentiary Hearing on October 8, 2008*

The Court conducted an evidentiary hearing on October 8, 2008, during which the debtor invoked his Fifth Amendment privilege not to testify in response to numerous questions. After the hearing, the Court denied: the debtor's then latest motion to dismiss, the debtor's emergency motions to stay the proceedings, and the debtor's motion to have his case reconverted to Chapter 13. The Court held in abeyance the trustee's motion for an order giving the trustee possession of the residence until completion of Adv. No. 08-1258 to determine whether the debtor's residence was or should become property of the debtor's estate. The Court also

6

issued an amended order directing the debtor to turn over the vehicles by October 14, 2008 (Docket #146).

### 6. Contempt Proceedings for Failure to Turnover Vehicles

The debtor failed to turnover the vehicles, at which time the Court issued an order for the debtor to appear and show cause why he should not be held in civil contempt (Docket #153). When the debtor did not appear at the show cause hearing on October 23, 2008, the court issued a bench warrant (Docket #170). The debtor was apprehended on October 28, 2008. The next day, after arranging for the vehicles to be turned over to the trustee, the debtor was released from custody.

### 7. Collateral Proceedings

#### a. 6th Circuit Case #08-4364

On October 21, 2008, the debtor filed a petition for a writ of prohibition with the Sixth Circuit Court of Appeals, seeking a writ of prohibition directing the bankruptcy court to dismiss the debtor's Chapter 7 case. On December 15, 2008, the Sixth Circuit denied the petition for a writ of prohibition.

#### b. N.D. Ohio District Court Case # 1:08CV2509

On October 23, 2008, the debtor filed a civil action against the trustee, the trustee's counsel, and the undersigned judge in the U.S. District Court for the

7

Northern District of Ohio, seeking actual and punitive damages for alleged violations of his civil rights. On November, 18, 2008, the district court dismissed the civil action and certified, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from its decision could not be taken in good faith.

### c. Cuyahoga County Court of Common Pleas Case #671277

On September 22, 2008, IMC initiated a separate lawsuit against the trustee, the trustee's counsel, and several creditors in the Cuyahoga County Court of Common Pleas, without first obtaining permission from this Court. While IMC's specific relationship to the debtor remains uncertain, on November 10, 2008, the Court heard evidence that in 2005 the debtor established a bank account for IMC with Charter One Bank and signed the signature card as president of IMC. In an order dated January 20, 2009, this court issued a finding of civil contempt against IMC and its counsel Donald Murphy, for failing to dismiss that case after being advised by this Court of controlling precedent from the Sixth Circuit holding that such an action could not be pursued against the trustee or his counsel without first obtaining permission from this Court. Although counsel has twice purported to voluntarily dismiss the state court action, it remains unclear whether a notice of voluntary dismissal has been properly filed and served in that case.

8

*8. Adv. No.08-1258 - To Avoid Transfer to IMC of Debtor's Interest in Real Property Located at 1860 Surrey Place and to Determine Validity, Priority, and Extent of Liens*

On August 28, 2008, the trustee initiated Adv. No. 08-1258 to determine the validity, priority, and extent of all interests in the real property located at 1860 Surrey Place, Gates Mills, Ohio, including claims to set aside any purported transfer of the debtor's interest in the real property to IMC. The debtor claimed that he transferred the Gates Mills property to IMC on February 8, 2007. The trustee was able to settle with each of the defendants except for the debtor and IMC. A trial was held on November 10, 2008, at which time the Court heard testimony from the debtor, the trustee, and a representative of Charter One Bank. On January 12, 2009, the Court issued its decision, in which it held the trustee could avoid the February 8, 2007, warranty deed transferring the real property from the debtor to IMC under 11 U.S.C. §§ 544 and 547, with the real property becoming property of the debtor's estate under 11 U.S.C. § 541.

*9. Appeal from Adv. No. 08-1258 - 6th Cir. BAP Case #09-8002*

On January 20, 2009, the debtor, but not IMC, filed a notice of appeal from the January 12, 2009, order entering final judgment in Adv. No. 08-1258. The appeal has been assigned 6th Cir. BAP Case #09-8002.

9

### 10.  Additional Motions to Dismiss

The debtor has continued to file various motions to dismiss his bankruptcy case, repeatedly raising some of the same arguments which the Court has previously addressed, as well as some new ones.

On October 22, 2008, the debtor filed a motion to dismiss in which he claimed, for the first time, that he did not sign or authorize the filing of his Chapter 13 petition filed on May 18, 2008.  Given the debtor's previous written filings and oral statements in open court acknowledging the filing of his bankruptcy case, and given the lack of any earlier claim that the bankruptcy proceeding came a surprise to him – a reaction one might expect upon learning that an unauthorized bankruptcy petition had been filed in one's name, the Court did not believe the debtor's factual allegations to be credible.  Nevertheless, the Court held that an evidentiary hearing was not needed, since judicial estoppel and/or related principles prevented the debtor from making this argument so far into his bankruptcy case.  Accordingly, on November 25, 2008, the Court denied the debtor's October 22, 2008, motion to dismiss.

On February 20, 2009, the debtor filed an emergency motion to strike his original bankruptcy petition and retroactively annul the automatic stay (Docket #345).  In this motion, the debtor argued that his bankruptcy case should

10

be dismissed because he never met the credit counseling requirement under 11 U.S.C. § 109(h) and because the petition should be stricken as unsigned under Rule 9011(a). On February 24, 2009, the Court heard argument on the debtor's motion, and in an Order dated February 25, 2009 (Docket #356), the Court denied it. The Court held that the credit counseling requirement of 11 U.S.C. § 109(h) is not jurisdictional and is subject to waiver and estoppel, particularly when the debtor's petition included a check next to the box requesting a waiver of the credit counseling requirement based on exigent circumstances and the debtor sought the benefits of bankruptcy petition until such time as he realized that he no longer desired to remain in bankruptcy. Similarly, the Court held that the debtor was judicially estopped from denying that a petition was filed on his behalf, even if someone else had actually signed his name on the petition.

*11. Sale of 2007 Bentley*

On December 15, 2008, the trustee filed a motion to sell the 2007 Bentley through an auction. On January 7, 2009, the Court heard argument on the motion and the debtor's objection. The Court approved the auction process, although the Court expected the trustee to seek further approval from the Court if the vehicle did not sell for at least $100,000. Despite efforts by the trustee and the auctioneer to obtain a higher price, the highest bid was $89,000. The trustee, without seeking

11

further permission from the Court, sold the vehicle to a third party for $89,000 after negotiating with the secured creditor for a $5,000 payment to the estate from the sale proceeds. On February 20, 2009, the debtor then moved to have the sale vacated. After hearing oral argument from the trustee and the debtor on February 24, 2009, the Court denied the motion to vacate the sale because there was no indication that further efforts would have yielded a higher sale price and because the vehicle had already been delivered to the purchaser. The Court's primary concern was simply that a sale below $100,000, after paying off the secured creditor, would provide little net benefit to the estate, given the anticipated sale costs, attorney's fees, and trustee commission. Moreover, abandonment and a possible section 506(c) claim to surcharge the collateral may have been the better course once it became clear to the trustee that the vehicle would not bring a minimum $100,000 sale price.

12. *March 6, 2009, Notice of Appeal - 6th Cir. BAP Case #09-8012*

On March 6, 2009, the debtor filed his most recent notice of appeal. In the notice, the debtor identified three rulings being appealed: (1) the February 25, 2009, Order (Docket #356) denying his February 20, 2009, motion to dismiss under 11 U.S.C. § 109(h) and Rule 9011; (2) the February 25, 2009, Order (Docket #355) denying his February 20, 2009, motion to vacate the sale of the

12

Bentley; and (3) the *absence* of any ruling on his March 2, 2009, motion for automatic dismissal pursuant to 11 U.S.C. § 521(i) (Docket #366). This appeal has been assigned 6th Cir. BAP Case #09-8012.

### 13. Current Pending Motions

#### a. Debtor's Latest Motions for a Stay
#### (Docket #326 and Adv. No. 08-1258 Docket #136)

On February 13, 2009, the debtor filed his most recent motions for a stay (Docket #326 and Adv. No. 08-1258 Docket #136). Other than different captions, the motions for a stay filed in the main case and in the adversary proceeding appear to be identical. As reasons for the stay, the debtor repeated many of the grounds previously raised, such as unauthorized signature on the petition, unauthorized filing of the petition, and lack of jurisdiction. The motions did not include a claim based on section 521(i). The debtor initially noticed these motions for hearing on March 31, 2009.

#### b. Debtor's Latest Motion to Dismiss, Based on Section 521(i) (Docket #366)

On March 2, 2009, the debtor filed his most recent motion to dismiss, raising for the first time the automatic dismissal argument based on section 521(i). The debtor noticed this motion for hearing on March 10, 2009.

13

*c.  Trustee's Liquidation Motions (Docket #s 57, 61, 69, and 338)*

Meanwhile, the trustee's initial motions to employ a realtor (Docket #57), to obtain physical possession of the debtor's residence (Docket #61), and to sell real property (Docket #69) were rescheduled for March 10, 2009, along with a new motion for turnover of a Kawasaki motorcycle and other personal property (Docket #338).  The Court also agreed to move up to March 10, 2009, the hearing on the debtor's emergency motion for a stay.  The debtor failed to appear in court on March 10, 2009.  After hearing argument from the trustee, the Court took the pending motions under advisement.

## DISCUSSION

The Court will first address the debtor's motion to dismiss under 11 U.S.C. § 521(i) (Docket #366), followed by the most recent motions for a stay (Docket #326 and Adv. No. 08-1258 Docket #136), and the trustee's liquidation motions (Docket #s 57, 61, 69, and 338).

*I.  Debtor's Emergency Motion to Dismiss Under 11 U.S.C. § 521(i)*

On March 2, 2009, the debtor filed an emergency motion to dismiss pursuant to 11 U.S.C. § 521(i)(1).  Section 521(a)(1) requires the debtor to make several disclosures. The statute provides in relevant part:

14

(a)  The debtor shall

  (1)  file –

    (A)  a list of creditors; and

    (B)  unless the court orders otherwise –

      . . . .

      (iv) copies of all payment advice or other evidence of payment
      received within 60 days before the date of the filing of the petition, by
      the debtor from any employer of the debtor.

If the debtor fails to make these disclosures "within 45 days after the date of the

filing of the petition, the case shall be automatically dismissed effective on the 46th

day." 11 U.S.C. § 521(i)(1).

The debtor asserts that he did not make several of the filings required under

§ 521(a)(1).  The docket in this case indicates that the debtor has not filed the

means test or the payment advices, as appears to be required by

11 U.S.C. § 521(a)(1)(B).   Consequently, the debtor argues that since he filed his

petition more than 45 days ago that the Court is required to automatically dismiss

the case.  Courts are split on whether § 521(i)(1) strips a court of all discretion over

whether to dismiss if the debtor has failed to make the disclosures required in  §

521(a)(1).  The courts which have found that there is no discretion point to the fact

that § 521(i)(1) states that the case will be "automatically dismissed" if the

15

disclosure requirements of § 521(a)(1) are not filed within 45 days of the petition date. *See Warren v. Wirum*, 378 B.R. 640 (N.D. Cal. 2007). One court summed up this view, stating, "[a]fter the expiration of the specified time period set forth in 11 U.S.C. § 521(i)(1), there are no exceptions, no excuses, only dismissal and the consequences that flow therefrom." *In re Ott*, 343 B.R. 264, 268 (Bankr. Colo. 2006). These courts view the language of § 521(i)(1) as being ironclad, totally stripping the bankruptcy court of any discretion, even in cases where the debtor initiated the case in bad faith, and where dismissal would further the debtor's abusive conduct. *See Wirum*, 378 B.R. at 647.

A growing majority of courts has disagreed with this interpretation, ruling that a court does retain at least some discretion over whether to dismiss a case pursuant to § 521(i)(1). *See Segarra-Miranda v. Acosta-Rivera (In re Acosta-Rivera)*, ___F.3d.___ (1st Cir. Feb. 19, 2009), No. 07-2736, 2009 U.S. App. LEXIS 3019, at *17; *CFCU Cmty. Credit Union v. Swimelar*, No. 6:07-CV-00341, 2008 U.S. Dist. LEXIS 3991, at *18 (N.D.N.Y Jan. 18, 2008); *In re Jackson*, 348 B.R. 487, 499 (Bankr. S.D. Iowa 2006). The First Circuit recently held that a bankruptcy court is not required to dismiss a case pursuant to § 521(i) if, "there is no continuing need for the information or a waiver is needed to prevent automatic dismissal from furthering a debtor's abusive conduct." *Acosta-Rivera*, 2009 U.S.

16

App. LEXIS 3019, at *17.  *See also In re Jackson*, 348 B.R. 487, 499 (Bankr. S.D.

Iowa 2006) (finding that the "unless the court orders otherwise" language of

§ 521(a)(1)(B) allows a court to refuse dismissal if the court concludes that

dismissing the case would promote abuse of the bankruptcy process).

Section 521(i)(1), by itself, appears to leave the Court with no discretion.

Automatic dismissal is required if the debtor does not file all of the "information

required under subsection (a)(1)" within 45 days of the filing of the petition.

§ 521(i)(1).   However, a closer reading of § 521(a)(1) suggests that the only filing

requirement which is absolutely required is the list of creditors.

*See* § 521(a)(1)(A).  The remaining disclosure requirements, all contained in

§ 521(a)(1)(B), are required "unless the court orders otherwise."  § 521(a)(1)(B).

Plainly §§ 521(a)(1)(B) and 521(i)(1) are interrelated, yet they do not appear

to comfortably coexist.  The former grants a court the power to waive the

disclosure requirements while the latter says that a case will be automatically

dismissed if those disclosures are not filed within 45 days of the filing of the

bankruptcy petition.  Some courts have found that a court may not retroactively

waive the disclosure requirements of § 521(a)(1).  *See Wirum*, 378 B.R. at 647.

They interpret these sections to mean that a court may waive the requirements of

§ 521(a)(1)(B), but only if the court does so within 45 days of the case being filed.

17

*See Wirum*, 378 B.R. at 647.  Other courts have found that, at least in cases where the debtor has abused the bankruptcy process, a court may retroactively waive the disclosure requirements of § 521(a)(1).  *See Acosta-Rivera*, 2009 U.S. App. LEXIS 3019, at *17.

As the First Circuit stated, neither reading is entirely satisfactory.  *See Acosta-Rivera*, 2009 U.S. App. LEXIS 3019, at *11.   However, after reviewing both the statutory language and the relevant case law, the Court finds the interpretation of the First Circuit to be the more persuasive one.

If Congress had wanted to deprive the bankruptcy court of discretion it could have placed all of the disclosures under § 521(a)(1)(A), which states "the debtor shall file a list of creditors."  Instead, Congress chose to make all of the other § 521(a)(1) disclosures mandatory "unless the court orders otherwise."  This is broad language, which grants a court wide latitude in determining when to waive the disclosures of §521(a)(1)(B).  Based on the equitable nature of the bankruptcy court, and the fact that Congress was attempting to limit abuse when it enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), it appears unlikely that Congress intended to pass a measure which would allow a debtor to file a bankruptcy petition, receive the benefits that automatically come from such a filing, abuse the process, and then escape when the debtor decided that

18

it was no longer advantageous.  Furthermore, the provision in 11 U.S.C.

§ 521(i)(4), which permits a court to decline to dismiss a case on motion of a

trustee when the court finds "that the best interests of creditors would be served by

administration of the case," would never be available to situations like the current

case because of the additional requirement that the court find "that the debtor

attempted in good faith to file all the information required by

subsection (a)(1)(B)(iv)."  Given the "unless the court orders otherwise" language

in 521(a)(1), the Court sees no reason to interpret section 521(i) as a rigid get-out-

of-bankruptcy-free card that even debtors abusing the bankruptcy process could

use with impunity, particularly when the best interests of creditors would be served

by administration of the case.

This appears to be the situation in the present case.   Since filing his

bankruptcy petition, the debtor has frequently ignored orders of the court and has

refused to cooperate with the trustee.  Once the debtor realized that bankruptcy was

unlikely to provide him with the results that he desired, the debtor sought to have

his case dismissed, but only after the case had been converted and the debtor had

lost his right to a voluntary dismissal under 11 U.S.C. § 1307(b).  As the debtor is

the only party now seeking dismissal based upon subsection 521(i), and the Court

finds that "waiver is needed to prevent automatic dismissal from furthering a

19

debtor's abusive conduct," *Acosta-Rivera*, 2009 U.S. App. LEXIS 3019, at *17, the debtor's emergency motion to dismiss his case pursuant to § 521(i)(1) is denied.

## II.  *The Debtor's Latest Motions to Stay Proceedings*

On February 13, 2009, the debtor filed his most recent motions for a stay (Docket #326 and Adv. No. 08-1258 Docket #136).  Other than different captions, the motions for a stay filed in the main case and in the adversary proceeding appear to be identical. As reasons for the stay, the debtor repeated many of the grounds previously raised, such as unauthorized signature on the petition, unauthorized filing of the petition, and lack of jurisdiction.  The motions did not include a claim based on section 521(i), but did include arguments related to the Court's January 12, 2009, decision in the adversary proceeding avoiding the debtor's transfer to IMC of the real property located at 1860 Surrey Place.

Although the debtor makes no reference in the most recent stay motions to Rule 8005, the Court will construe the debtor's motions as seeking a stay pending both current appeals: (1) the January 20, 2009, Notice of Appeal from Adv. No. 08-1258 - 6th Cir. BAP Case #09-8002; and (2) the March 6, 2009, Notice of Appeal from Case #08-13700 - 6th Cir. BAP Case #09-8012.

20

*A.  Standard for Determining Whether to Issue a Stay Pending Appeal*

Under Bankruptcy Rule 8005, the factors to be considered by a court in determining whether a stay or injunction pending appeal should issue are: (1) whether the applicant has demonstrated a likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other interested parties; and (4) whether the public interest would be served by issuing the stay.  *See Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) ("These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together."); *In re Dow Corning Corp.*, 255 B.R. 445, 542 (E.D. Mich. 2000); *In re Best Reception Sys., Inc.*, 219 B.R. 988, 992-94 (Bankr. E.D. Tenn. 1998) (applying Rule 8005 and *Griepentrog* standard); *In re Abbo*, 191 B.R. 680, 682 (Bankr. N.D. Ohio 1996) (same).

*B.  Application of Rule 8005 Standard to the January 20, 2009, Notice of Appeal from Adv. No. 08-1258 - 6th Cir. BAP Case #09-8002*

In applying these factors to the circumstances of the debtor's appeal from the January 12, 2009, memorandum of opinion and order in Adv. No. 08-1258, the Court first concludes that the debtor's appeal has little likelihood of success on the

21

merits. First, it is unclear if the debtor even has appellate standing to appeal the decision in the adversary proceeding as he has previously disavowed any ownership interest in the real property located at 1860 Surrey Place, and the defendant whose ownership interest was specifically avoided, IMC, has not joined the debtor's appeal or initiated its own appeal from the January 12, 2009, memorandum of opinion and order. *See generally Hyundai Translead, Inc. v. Jackson Truck & Trailer, Inc.,(In re Trailer Source, Inc.)*, 555 F.3d 231, 235-38 (6th Cir. 2009) (discussing prudential doctrine of "appellate standing" where "standing to appeal a bankruptcy order is limited to 'person[s] aggrieved' by that order, that is, parties 'directly and adversely affected pecuniarily.' ") (*quoting Harker v. Troutman Enters., Inc. (In re Troutman Enters., Inc.),* 286 F.3d 359, 364 (6th Cir. 2002)). Second, the Court finds little merit in the debtor's arguments that the trustee cannot avoid the debtor's transfer of real property to IMC when such transfer was unrecorded as of the petition date. These arguments were thoroughly addressed in the Court's January 12, 2009, memorandum of opinion in Adv. No. 08-1258. Third, the Court finds little merit in the debtor's repeated arguments that his underlying bankruptcy case must be dismissed on various grounds such as: lack of jurisdiction, lack of due process, lack of his consent to file the petition, lack of his signature on the petition, lack of

22

any real creditors, and failure to meet the credit counseling requirement of

11 U.S.C. § 109(h).  While not a part of the adversary proceeding, such claims, if

not previously waived and found to be meritorious, could result in the dismissal of

his case and, consequently, the dismissal of the adversary proceeding.

　　While the debtor's recent motion to dismiss based on 11 U.S.C. § 521(i)

presents a stronger argument, it is unclear how that argument, first raised on

March 2, 2009, and not decided until today, would be properly presented in the

January 20, 2009, notice of appeal.  In any event, as explained below, the denial of

the current motions for stay is without prejudice to the debtor promptly moving for

a stay pending a new appeal of today's denial of his March 2, 2009, motion to

dismiss based on 11 U.S.C. § 521(i).

　　As for the remaining three factors, while the trustee's sale of the debtor's

residence would force the debtor out of his present residence, the debtor has

disavowed any ownership interest in that residence.  Nor has the debtor offered any

indication that he is current on any payments with IMC, assuming the unrecorded

transfer was intended to be just a mortgage interest.  In addition, the delay pending

appeal may result in further loss in value in the real property, reducing the

likelihood that creditors would be paid in full.  As for the public interest, the

debtor's history of refusing to comply with orders of the Court and failing to

23

cooperate with the trustee suggests that the public interest would be better served by reducing the possibility of further delay and potential abuse of the bankruptcy process.

Therefore, the relevant factors under Bankruptcy Rule 8005 do not support the granting of a stay pending the debtor's January 20, 2009, appeal from Adv. No. 08-1258 - 6th Cir. BAP Case #09-8002.

*C.  Application of Rule 8005 Standard to the March 6, 2009, Notice of Appeal from Case #08-13700 - 6th Cir. BAP Case #09-8012.*

In applying the four factors to the circumstances of the three rulings identified in the debtor's March 6, 2009, Notice of Appeal, the Court first concludes that the debtor's appeal has little likelihood of success on the merits.  In the notice, the debtor identified three rulings being appealed: (1) the February 25, 2009, Order (Docket #356) denying his February 20, 2009, motion to dismiss under 11 U.S.C. § 109(h) and Rule 9011; (2) the February 25, 2009, Order (Docket #355) denying his February 20, 2009, motion to void the sale of the Bentley; and (3) the *absence* of any ruling on his March 2, 2009, motion for automatic dismissal pursuant to 11 U.S.C. § 521(i) (Docket #366).  The Court has previously explained why it believes the debtor is estopped from arguing that his case should be dismissed for failing to comply with the credit counseling

24

requirement of 11 U.S.C. § 109(h) and the purported absence of the debtor's own signature on the petition, and the Court sees little likelihood of the debtor succeeding in an appeal on these grounds.

As for the Court's refusal to vacate the sale of the Bentley, the debtor never sought a stay pending appeal of the January 7, 2009, Order authorizing the trustee to sell the Bentley. Subsection 363(m) of the Bankruptcy Code provides in pertinent part

> The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether on not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

In the present case, the debtor never sought a stay on the January 7, 2009, Order authorizing the sale of the Bentley and only sought to void the sale after the vehicle had been transferred to a third party.

As for the debtor's appeal from the *absence* of an order dismissing the case under 11 U.S.C. § 521(i), the Court is unclear how this issue is properly presented in the debtor's March 6, 2009, Notice of Appeal. Although 11 U.S.C. § 521(i)(1) indicates that a "case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition," 11 U.S.C. § 521(i)(2) appears to provide the procedure under which a party in interest may request the court to enter and

25

order dismissing the case:

> [A]ny party in interest may request the court to enter an order dismissing the case.  If requested, the court shall enter an order of dismissal not later than 5 days after such request.

In the present case, the debtor filed his notice of appeal on March 6, 2009, four days after filing his motion to dismiss under 11 U.S.C. § 521(i) and before the March 10, 2009, hearing date provided in the debtor's notice of hearing, at which the debtor failed to appear.  In any event, as explained below, the denial of the current motions for stay is without prejudice to the debtor promptly moving for a stay pending a new appeal of today's denial of his March 2, 2009, motion to dismiss based on 11 U.S.C. § 521(i).

As for the remaining three factors, the Court acknowledges that the debtor may be irreparably harmed should he prevail on appeal in having his bankruptcy case dismissed, as it seems unlikely that the debtor could be made whole once the trustee has proceeded with liquidating the debtor's assets.  On the other hand, the delay pending appeal may result in further loss in value in the debtor's assets, reducing the likelihood that creditors would be paid in full.  In particular, if the debtor somehow succeeded in undoing the sale of the Bentley notwithstanding 11 U.S.C. § 363(m), the purchaser may well suffer loss from having to litigate the validity of the sale and possibly returning the vehicle for a new sale.  As for the

26

public interest, the debtor's history of refusing to comply with orders of the Court and failing to cooperate with the trustee suggests that the public interest would be better served by reducing the possibility of further delay and potential abuse of the bankruptcy process.

Therefore, the relevant factors under Bankruptcy Rule 8005 do not support the granting of a stay pending the debtor's March 6, 2009, appeal -- 6th Cir. BAP Case #09-8012 -- from (1) the February 25, 2009, Order denying his February 20, 2009, motion to dismiss under 11 U.S.C. § 109(h) and Rule 9011; (2) the February 25, 2009, Order denying his February 20, 2009, motion to vacate the sale of the Bentley; and (3) the *absence* of any automatic ruling on his March 2, 2009, motion for automatic dismissal pursuant to 11 U.S.C. § 521(i).

### D. *Future Motion for Stay Pending Appeal under Rule 8005*

While the Court finds the debtor's latest motions for a stay to be without merit, the Court may well be inclined to grant a stay under Bankruptcy Rule 8005, should the debtor: (1) timely appeal the Court's current ruling denying the debtor's motion to dismiss based on subsection 521(i), (2) promptly move for a stay pending appeal under Rule 8005, and (3) provide acceptable proof of insurance or other form of security for the real and personal property that are currently the subject of turnover motions by the trustee. Without prejudging any such motion,

27

the Court notes that the debtor's § 521(i) argument, although unsuccessful before this Court, has the backing of at least several district court decisions. In addition, if the debtor's assets were sold by the trustee, it is unlikely that the debtor would ever be able to recover the full value of those assets, given the administrative expenses associated with the liquidation of those assets. If such assets remain insured throughout the course of the appeal, the value could be preserved should the trustee's position be upheld on appeal. Also, if the trustee were given immediate possession of the real property, the trustee would be required to incur costs to maintain and secure the property until such time as it could be sold. On the other hand, the Court remains skeptical as to whether the *pro se* debtor could successfully prosecute any such appeal without the benefit of counsel. Indeed, the Court has repeatedly urged the debtor to obtain knowledgeable bankruptcy counsel. In short, with appropriate protections, it may well be appropriate to stay liquidation of the debtor's assets until a reviewing court can determine whether this Court has properly determined that these assets should be liquidated for the benefit of the debtor's creditors, notwithstanding the debtor's numerous arguments to the contrary.

28

*III. The Trustee's Liquidation Motions*

The trustee's motions to employ a realtor (Docket #57), to change locks at 1860 Surrey Place, Gates Mills, Ohio (Docket #61), to sell real property located at 1860 Surrey Place, Gates Mills, Ohio (Docket #69), and for an order directing the debtor to turnover personal property including a Kawasaki motorcycle (Docket #338) are adjourned to **March 31, 2009, at 10:00 a.m.**

CONCLUSION

For the reasons stated above: (1) the debtor's emergency motion to dismiss pursuant to 11 U.S.C. § 521(i) (Docket #366) is denied; (2) the debtor's emergency motions to stay (Docket #327 and Adv. No. 08-1258 Docket #136 ) are denied, without prejudice to the debtor promptly filing a motion for a stay pending a new appeal of today's denial of the motion to dismiss based on § 521(i)(1), which the Court is prepared to hear on March 31, 2009; and (3) the trustee's motions to employ a realtor (Docket #57), to change locks at 1860 Surrey Place, Gates Mills, Ohio (Docket #61), to sell real property located at 1860 Surrey Place, Gates Mills, Ohio (Docket #69), and for an order directing the debtor to turnover personal property including a Kawasaki motorcycle (Docket #338) are adjourned to **March 31, 2009, at 10:00 a.m.**

IT IS SO ORDERED.

29